# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

BOULEVARD & TRUMBULL
TOWING, INC.,
    Plaintiff,

v.

CITY OF DETROIT, CITY OF
DETROIT POLICE DEPARTMENT
and DETROIT BOARD OF
COMMISSIONERS,
    Defendants.

Case No. 17-cv-12446
Honorable Sean F. Cox
Magistrate Judge Patricia T. Morris

# PLAINTIFF'S SHOW CAUSE
# REPLY BRIEF REGARDING FEDERAL DUE PROCESS CLAIMS

## I. THE CITY HAS NEVER IDENTIFIED THE BASIS FOR RESCINDING OR TERMINATING THE CONTRACT AND ALL REASONS OFFERED NOW ARE STATEMENTS BY COUNSEL TO BACKSTOP THE PRIOR DECISIONS.

The arguments made now by the City are beyond the scope of the show cause order because the City has never specifically identified the basis for rescinding B&T's permit[1] and has never before alleged an "emergency" or the other reasons the City now relies on. Because the City never identified the basis for termination (despite repeated requests), current offered reasons are mere speculation by counsel to backstop its prior decisions after declining to respond to B&T for months.

## II. THE CITY OF DETROIT INCORRECTLY CLAIMED FOR THE FIRST TIME THAT ITS RESPONSE WAS JUSTIFIED BY AN EMERGENCY.

In its Brief, for the first time,[2] the City claims that its ongoing refusal to provide B&T with a due process hearing was justified because of an "emergency."

---

[1] The Board minutes state "Based upon the recommendation of Corporation Counsel (City of Detroit), the Board of Police Commissioners hereby rescinds the towing permits of Gasper Fiore, and Boulevard & Trumbull Towing, and its corporate affiliates." The Board has never provided the basis for rescinding or a hearing to respond.

[2] B&T notes that the City removed this case based on the existence of federal jurisdiction over the due process claims. By removing this case to federal court, the City has waived any argument that a state law remedy bars the federal due process claim. "We accordingly join the Second and Fourth Circuits in holding

1

Detroit_15033836_14

As noted above, this argument is beyond the scope of the show cause order. Even so none of the varying reasons for termination offered by counsel constitutes an emergency.

"Emergencies" arise when it is impracticable to have a pre-deprivation hearing. They commonly impact physical threats to public safety.[3] In *Lowery v. Faires*, an emergency situation existed when cattle were starving and decomposing on the owner's land and were breaking out to cause property damage presenting "an extreme health hazard." 57 F. Supp. 2d 483, 492-94 (E.D. Tenn. 1998), *aff'd*, 181 F.3d 102 (6th Cir. 1999). *See also e.g. Flatford, supra,* 17 F.3d at 167 ("Where the need to protect lives is the basis for such an intrusion, government officials should not be made to hesitate in performing their duties, particularly where post-deprivation remedies can immediately correct any errors in judgment.").

The City does not cite a case with comparable facts in support of its claim that there was an emergency in this case. Gasper Fiore was indicted on May 31, 2017 and the City did not take any action for two weeks and did not declare the

---

that a defendant waives the exhaustion requirement by removing to federal court." *Lilly Investments v. City of Rochester*, 674 Fed.Appx. 523 (6th Cir. 2017).

[3] The cases cited by the City involve such physical threats: confiscating typewriters when typewriter parts were used to stab prison guards; or demolishing a home that threatened to fall into the street or another home. Dkt. 57, p. 10 of 21.

permits *"void ab initio"* until another two months had passed. Even then, the City violated its own procedures that specifically require a post-deprivation hearing as soon as possible. "[O]fficials cannot deny citizens due process by falsely invoking an emergency need for quick action." *DiLuzio v. Vill. of Yorkville, Ohio*, 796 F.3d 604, 614 (6th Cir. 2015), citing *Elsmere Park Club, L.P. v. Town of Elsmere,* 542 F.3d 412, 418 (3d Cir. 2008) ("That is, we cannot apply so much deference as to allow the government to avoid affording due process to citizens by arbitrarily invoking emergency procedures."). Emergencies require immediate action. *See, e.g., Flatford v. City of Monroe,* 17 F.3d 162, 167, 168 (6th Cir. 1994) ("Protecting citizens from an immediate risk of serious bodily harm falls squarely within those 'extraordinary situations'.."); *Grayden v. Rhodes*, 345 F.3d 1225, 1237 (11th Cir. 2003)(" the emergency evacuation of tenants from a dangerous and potentially life-threatening structure qualifies as an extraordinary situation" that justifies postponing the required hearing before an eviction until after the deprivation); *S. Commons Condo. Ass'n v. Charlie Arment Trucking, Inc.*, 775 F.3d 82, 86 (1st Cir. 2014)(" By their nature, emergency situations require an immediate response.").

3

### III. THE CITY'S CHARACTERIZATION OF THE PERMIT AS A CONTRACT AS A SWORD TO DISAVOW ITS OBLIGATIONS IS NOT A GARDEN VARIETY CONTRACT ACTION AND B&T HAS ALSO ALLEGED NON-CONTRACTUAL DUE PROCESS CLAIMS.

The City also exceeded the scope of the show cause order when it alleged for the first time that exhaustion of state law remedies is required when the due process arises out of an alleged breach of contract.

In this case there is a dispute about what the nature of the property interest possessed by B&T is. The City previously alleged that the permits are contracts in order to declare them *void ab initio*[4]. Now, the City describes B&T's case as solely a breach of contract action to avoid due process review. B&T has alleged a constitutionally protected property interest other than a contractual interest[5] (relying on Sixth Circuit case law *Lucas*[6] and *Greg*) and asserting damage to its

---

[4] In the past the City disagreed claiming that the permits were not contracts. Tab 1(also marked as Plaintiff's Exhibit P).

[5] The property interest arises out of B&T's position on the tow rotation, the requirement that tow assignments be equitable and the procedures for termination.

[6] When analyzing a towing case, the *Lucas* court held that rules of "mutually explicit understanding" constitute a property interest and specifically noted that the plaintiff could have cited a contract to establish a due process claim: "In the instant case, however, Plaintiffs can point to no ordinance, *contract* or other "rules of mutually explicit understandings" that support their claim of entitlement to remain on the stand-by list. *See Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)." *Lucas v. Monroe County*, 203 F.3d 964 at 978.

4

reputation.[7] The City also specifically acknowledges[8] that contractually created property interests can be the basis for a due process claim. The Sixth Circuit has also stated "[m]ost, if not all, state-created contract rights [are] assuredly protected by procedural due process…." *Charles v. Baesler*, 910 F.2d 1349 (6th Cir. 1990). The two cases[9] cited by the City *(Kaminski* and *Ramsey)* involved claims that contractual rights had been changed, not been terminated.[10] *Ramsey* distinguished the interest in a pure benefit of employment from the right to employment to emphasize that a state court action for damages sufficed in that case and called it a simple breach of contract.[11]

This case is not a simple or garden variety contract case. This is a dispute over an entitlement. This is a case that challenges state policies and procedures

---

[7] "[W]here a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Board of Regents v. Roth*, 408 U.S. 564, 573 (1972).

[8] The City's brief states: "[S]ome contractually created property interests are protected by a cause of action under section 1983…" Doc. 57, p. 14 of 21.

[9] Courts often refer to these types of contractual claims as "garden variety" contract claims.

[10] In *Kaminski* the defendant changed health care benefits to monthly stipends. In *Ramsey,* the municipality changed a sick day calculation.

[11] "Although Ramsey has been deprived of her accumulated sick leave days, her interest in the money she would receive for those days upon her retirement, while important to her, is not as important as her right to her employment of which she has not been deprived." *Ramsey v. Board of Educ.,* 844 F.2d 1268, 1274 (6th Cir. 1988).

used to deprive B&T of its entitlement. The City is attempting to use its policies and procedures and the FRC as a sword to disavow and terminate legal obligations that were repeatedly approved for years by the City's executive and legislative branches (including in a bankruptcy proceeding). To accomplish this goal, the City's legal department is taking a legal position that contradicts its prior positions. The City has also refused to provide the required due process hearing, refused to state the basis for the termination and blocked B&T from obtaining future work even when B&T was the demonstrated low bidder on a contract. Tab 2 (also marked as Plaintiff's Exhibit V). These actions are not garden variety and are an example of the type of action due process is designed to protect:

> "A civil rights action based on the deprivation of due process and a contract action to recover damages for a breach are independent remedies. The civil rights action based on deprivation of a property interest established by the contract seeks vindication for the arbitrary manner in which the contract was breached."[12]

Consistent with *Lucas* and *Greg*, B&T has a due process claim for the rescinding and termination of the Permit. B&T asks this Court to compel the City to provide it that due process.

---

[12] *Vail v. Bd. Of Educ.*, 706 F.2d 1435, 1448 (7th. Cir. 1983)(Eschbach, J., concurring).

## IV. THE CITY MISSTATES CASE LAW IN ITS BRIEF

In its brief the City incorrectly cites *Warren v. Haley* for the proposition that substantive due process claims can only proceed when state remedies are inadequate. Dkt. 57, p. 18 of 21. In *Warren*, the Sixth Circuit held that a due process claim based on random and unauthorized acts failed because of a state law remedy. However, when the court analyzed the substantive due process claim made by the plaintiff the court did not consider state law remedies:

> "Third, the doctrine of substantive due process-independent of the incorporation doctrine-has no application to the facts of this case. The case does not fall within any of the various theories of substantive due process elaborated by the Supreme Court. See *Rochin v. California*, 342 U.S. 167 (1951); *Roe v. Wade*, 410 U.S. 113 (1973). The case must stand or fall as a procedural due process or just compensation case, and for the reasons outlined above and by the District Court below, there is no ground based on Kentucky's procedures to stand on here."

*Warren v. Haley,* 815 F.2d 706, 707 (6th. Cir. 1987).

BODMAN PLC

By:/s/Joseph J. Shannon
Joseph J. Shannon (P38041)
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan  48226
(313) 259-7777
*jshannon@bodmanlaw.com*
Attorneys for B&T Corporation

Dated:   January 8, 2018.

7

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing paper with the Clerk of the Court using the ECF System and that such papers were served by the ECF System upon the attorneys of record.

/s/Joseph J. Shannon
Joseph J. Shannon (P38041)
jshannon@bodmanlaw.com

January 8, 2018

Detroit_15033836_14